Wilmer J. Patlow, J.
Petitioner is the sole proprietor of the Abbott Manor Nursing Home providing care to medically indigent patients under the Medicaid program in the City of Buffalo.
During the year 1973 the State Department of Health conducted an audit of the books and records of petitioner’s nursing home for the fiscal years ending September 30, 1970 and September 30, 1971. In September of 1973 the auditors met with petitioner and his administrative assistant for the purpose of holding what was known as an "exit conference,” at which time audit adjustments were explained and petitioner was given opportunity to discuss and object to those adjustments.
On April 29, 1975, petitioner was sent copies of the audit reports and advised that he had 30 days to file a written protest before the adjustments became final. Petitioner submitted such a protest.
The material submitted by petitioner, as well as the Health Department audit report, were reviewed by the rate review board which is comprised of one deputy health commissioner and two non-Health Department representatives experienced in the field of health care reimbursement. The board made its recommendation to Health Commissioner Robert P. Whalen who in turn advised petitioner on June 22, 1975 that he had upheld the adjustments contained in the original audit report.
As a result of the foregoing, petitioner was notified that on the basis of the adjusted audits, a retroactive downward adjustment had been made to his nursing home reimbursement rate between the period of July 1, 1971 and December 31, 1973.
Based upon this downward revision of the reimbursement rate, the State claims Abbott Manor Nursing Home was overpaid for services rendered to Medicaid patients during the above-mentioned period in the sum of $121,394.21. Payment in that amount has been demanded from petitioner.
Petitioner made several requests for a hearing throughout the summer of 1975; however, the Department of Health denied such requests. New York State’s medical assistance plan (Social Services Law, §§ 363-369) and the applicable rules and regulations do not provide for any type of administrative hearing either before or after the audit determination, although the Health Department does provide a hearing in *514 cases involving revocation, suspension or denial of a nursing home operating certificate.
Petitioner now brings this CPLR article 78 proceeding, seeking the following relief:
"1. Annulling the determination of Commissioner Whalen upholding the findings and adjustments made by the auditors in connection with the audit of the books and records of the Abbott Manor Nursing Home for the fiscal years ending September 30, 1970 and September 30, 1971, and further annulling the retroactive reimbursement rates established by respondents for the period between July 1, 1971 and December 31, 1973, which rates were established on the basis of the audits and the findings and adjustments made as a result thereof; and
"2. Directing respondents, before any retroactive adjustments are made to Abbott Manor Nursing Home’s reimbursement rate, to grant petitioner a hearing at which he may present evidence in support of his reasonable cost contentions and at which he may cross-examine the auditors to ascertain or impeach the basis for their conclusions; and
"3. Directing that the aforesaid hearing shall be held before an impartial person who shall make findings of fact and set forth, in his decision, the basis underlying the decision and the evidence relied upon by him in reaching his decision.”
Petitioner contends that the denial of his hearing request, as well as the lack of opportunity to have such a hearing within the administrative procedures of the agency, constitutes a deprivation of his property without due process of law.
Respondents argue that their procedures, namely the "exit conference” coupled with review by the three-member rate review board, are sufficient to satisfy due process requirements.
The court cannot agree with respondents’ position.
While due process requirements may be satisfied without a hearing in matters involving prospective rates and future payments (Matter of Sigety v Ingraham, 29 NY2d 110), such is not the case at bar. Here we are dealing with a rate audit retroactively applied which has created a financial liability for petitioner, that is both real and substantial.
Indeed, the Court of Appeals in Matter of Sigety v Ingraham (supra), while dismissing a nursing home owner’s petition for an order annulling certain rates set by the Commissioner *515 of Health, was quick to emphasize that the Health Commissioner’s announcement in advance of a maximum reimbursement rate involved no taking of property. The court went on to point out that if petitioner nursing home was dissatisfied with rates set by the commissioner, it could refrain from accepting Medicaid patients.
Here the reimbursement rate set by the commissioner, because of its retroactive effect, does result in the taking of property; and petitioner’s option of rejecting Medicaid patients is no longer extant.
"[T]he degree of procedural safeguard required by the constitution will be influenced by the importance of the private interest effected.” (Vail v Quinlan, 406 F Supp 951.)
Certainly, a hearing such as that sought by petitioner herein is a procedural safeguard of a degree commensurate with the importance of petitioner’s interest affected by respondents’ actions. Therefore, the court finds such a hearing to be constitutionally required.
Petitioner may submit an order granting the relief requested.